UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN WILLIAMS,

        Plaintiff,

vs.

Case No. 09-13891
HON. GEORGE CARAM STEEH

CITY OF TAYLOR, *et al.*,

        Defendants.

_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SETTING FINAL
PRETRIAL CONFERENCE AND TRIAL DATES

I.  INTRODUCTION

     Plaintiff initiated this 42 U.S.C. § 1983 action on October 1, 2009 alleging that defendant-police officers Matthew Minard, Michael Calabrese, Dana Parish, Don Helvey, Jeffrey Graves, John Marimpietri, Eric Godlewski and Matthew Edwards violated his Fourth Amendment right to be free from the excessive use of force (count I) when they, in effecting his arrest, beat, kicked, and punched him in the head and face multiple times, and applied a Taser weapon to his back causing plaintiff to suffer injuries to his head, abrasions, black eyes, a torn left ear lobe, and a broken tooth, resulting in an abscessed tooth and exposed nerve, continued hearing loss, migraine headaches, back and neck pain.  Plaintiff further alleges that the City of Taylor violated his constitutional rights by failing to adequately train and/or supervise its police officers about the proper use of force when effecting an arrest (count II).  Plaintiff also brings state law claims of assault and battery (count III) and gross negligence (count IV).

Before the court is the defendants' motion for summary judgment, filed on December 2, 2010. The parties have submitted their briefs in support of their respective positions and a hearing was held on February 8, 2011.

## II.   FACTUAL BACKGROUND

On December 11, 2007, after closing his booth at the Gibraltar Trade Center in Taylor, Michigan, plaintiff was headed to his home in Dearborn, Michigan. At approximately 9:07 p.m., defendant Minard observed plaintiff fail to stop at a stop sign before turning westbound on Eureka Road. Defendant Minard, who was in a semi-marked police vehicle, turned on his lights to indicate to plaintiff to pull his car over. Plaintiff admits that he noticed the police lights but did not initially pull his car over. Plaintiff clams that he did not immediately pull over because he was previously stopped by aTaylor police officer and was warned that if he was stopped again in the City of Taylor, it would be his "ass." However, plaintiff testified at his deposition that he did not want to pull over because he had outstanding traffic warrants and was driving on a suspended license and did not want to go jail. Plaintiff called his fiancé, Serrita Porter, and informed her that he was being pulled over, that he did not know why and requested that she meet up with him. Once he knew Ms. Porter was on her way, plaintiff pulled his vehicle near the median on Telegraph Road. According to plaintiff, he immediately exited his vehicle and walked to the curb and laid down on his stomach with his arms spread out in front of him.

Defendants' version of what transpired is quite different. Defendants maintain that instead of pulling over when defendant Minard activated his lights, plaintiff accelerated and headed west on Eureka Road. Plaintiff was speeding, weaving in and out of traffic, running red lights, and took police on a high speed chase for approximately 4.74 miles. Defendants

assert that once plaintiff pulled over, he ran across Telegraph Road, requiring several of the officers to pursue him on foot. The officers ran after the plaintiff and shouted "stop, police." Defendants claim that plaintiff did not stop until defendant Calabrese caught up to him. Defendant Calabrese then grabbed plaintiff's shirt collar and pulled him to the ground.

Defendants Minard, Marimpietri and Parish caught up to the point where plaintiff had been taken to the ground, and yelled for plaintiff to put his hands behind his back. According to defendants, plaintiff refused to comply. Defendants also maintain that plaintiff, who is six feet and two inches tall, and weighs approximately 220 pounds, struggled with the officers, moving about aggressively, wrestling, and jerking in an effort to prevent the officers from placing his hands in handcuffs. The officers believed plaintiff was willing to do anything in order to get away from them. However, defendants Minard and Marimpietri testified at their depositions that plaintiff never kicked, punched, or struck any of the defendant-officers and defendant Calabrese testified that at no time did he fear for his own safety. While plaintiff continued to struggle with the officers, defendant Marimpietri punched plaintiff in the arm several times with a closed fist in order to pull plaintiff's arm out from under him. Defendant Parish then warned "Taser" and then administered a drive stun tase for approximately five seconds. Plaintiff still refused to be handcuffed, so defendant Parish tased him a second time in the back for two or three more seconds. At this point the officers were finally able to handcuff plaintiff.

Plaintiff disputes defendants' version and claims that he was not resisting arrest. As soon as defendants Minard, Marimpietri, Calabrese and Parish approached him, they circled him and began beating him. They kicked and punched him in his head, face, back

and shoulders. One of the defendants forcefully stomped on the back of plaintiff's head causing plaintiff to break his front tooth. Contrary to defendants' story, plaintiff claims that none of the defendants gave him any commands. Once defendants handcuffed plaintiff, he was tased twice on his back by defendant Parish without any warning or justification. Plaintiff heard one of the defendants yell "that's enough. . . . all right, that's enough" and plaintiff was then lifted off of the pavement and taken to the police vehicle.

Plaintiff was subsequently charged with driving on a suspended license, fleeing and eluding, and resisting arrest. Plaintiff pled guilty to the fleeing and eluding charge in exchange for dismissal of the other charges. While in custody, plaintiff was transported to Oakwood Heritage Hospital where he was treated for his injuries. Plaintiff claims that he still suffers from constant migraine headaches and hearing loss as a result of defendants' egregious conduct.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56© that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (citing *Anderson,* 477 U.S. at 252).

## IV. ANALYSIS

A.  Fourth Amendment

A claim that a city police officer used excessive force during an arrest is governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Fourth Amendment jurisprudence recognizes "that the right to make an arrest. . . necessarily carries with it the right to use some degree of physical coercion or threat to effect to it." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)); *see also, Monday v. Oulette*, 118 F. 3d 1099, 1102 (6th Cir. 1997). However, a gratuitous use of force on a suspect that has already been subdued violates the Fourth Amendment. *See Roberts v. Manigold*, 240 Fed. App'x. 675, 677 (6th Cir. June 14, 2007) (finding jury question where record supported a finding that plaintiff was "completely pinned" by a 225-pound officer, a former U of M football player, when the officer's partner continued to taser the plaintiff); *see also, Baker v. City of Hamilton*, 471 F. 3d 601, 607 (6th Cir. 2006).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second-judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The reasonableness of an officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* at 396 (citing *Terry*, 392 U.S. at 20-22)). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Terry*, 392 U.S. at 21, and *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force

-6-

constitutional." *Id.* at 397 (citing *Scott*, 436 U.S. at 138). The reasonableness inquiry is based on the totality of the circumstances and district courts must give "careful attention to the facts and circumstances of each particular case." *Id.* at 396.

Defendants argue that they are entitled to qualified immunity because no Fourth Amendment violation occurred. Defendants further assert that even if plaintiff's constitutional rights were violated, no reasonable officer presented with an identical situation would believe what he was doing was unlawful, therefore plaintiff's rights were not 'clearly established' on December 11, 2007. In resolving the issue of qualified immunity on summary judgment, courts are required to engage in a two-step decisional process: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

"The relevant, dispositive inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 121)). The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Sheets v. Mullins*, 287 F. 3d 581, 586 (6th Cir. 2002). A district court enjoys "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 129 S. Ct. At 818. The right to be from excessive force is a clearly

established right.  *See Shreve v. Jessamine County Fiscal Court*, 453 F. 3d 681, 688 (6th Cir. 2006).

Defendants maintain that no constitutional violation occurred, arguing that plaintiff's version of what occurred on December 11, 2007 is contradicted by the record.  Defendants assert that if plaintiff had been struck and kicked as many times as he claims, he would have sustained more than contusions and scrapes.  Defendants also point to the fact that plaintiff's CT scans (cervical spine, head and ear) taken at Oakwood Heritage Hospital, all came back normal.  Further, plaintiff had painless range of motion in his neck, back and extremities.  Therefore, under the totality of the circumstances – plaintiff's continuous efforts to evade the police, including speeding, weaving in and out of traffic and running red lights, the lack of corroborating medical evidence, and the severity of the crime (fleeing and eluding), considered in conjunction with the deference owed to an officer's on the spot judgment –demonstrate that a reasonable juror would conclude that no constitutional violation occurred.

Plaintiff counters that based on the totality of the circumstances, it is clear that defendants were unjustified in their use of force.  Plaintiff argues that he posed no threat to the defendants or the public safety because he was on the ground and not resisting arrest at the time the officers beat and kicked him. Plaintiff claims that after defendants had placed him in handcuffs, they continued to strike and kick him while defendant Parish implemented his Taser weapon twice to plaintiff's back.   Plaintiff argues that there are genuine issues of material fact regarding whether the circumstances facing the defendants on December 11, 2007 justified the amount of force used against the plaintiff.

Taking the evidence in the light most favorable to the plaintiff, the court cannot

conclude as a matter of law that defendants Minard's, Marimpietri's, Calabrese's and Parish's use of force was objectively reasonable under the Fourth Amendment. Defendants rely on the fact that plaintiff took them on a high speed chase, however at the time the defendants surrounded the plaintiff, he was on the ground, and posed no apparent threat to the defendants or the public safety. Accepting plaintiff's version of the events, plaintiff was not resisting arrest at the time the officers kicked, punched, and stomped on his head, and when defendant Parish applied his Taser weapon to plaintiff's back twice, plaintiff had already been placed in handcuffs. Defendants also downplay the medical evidence, claiming that there is no corroborating medical evidence of plaintiff's injuries. Defendants ignore plaintiff's Wayne County Jail Health Services records which show that on December 13, 2007, he was seen by a nurse regarding his injuries. Plaintiff complained of a headache, back, neck and tooth pain. The nurse noted that he had cuts on his face and back, abrasions on the right side of his head and a left ear injury. *See* Plf.'s Br., Ex J. The examiner also noted that the plaintiff had two burn marks the size of a silver dollar on the his back and that scabs had begun to form on his forehead, and behind his left ear. *Id.* The medical records also establish that plaintiff was seen by a dentist on December 18, 2007 because of a broken tooth. *Id.*

Defendants rely on *Dudley v. Eden*, 260 F. 3d 722 (6th Cir. 2001), where the Sixth Circuit Court of Appeals declined to find a Fourth Amendment violation when the defendant-officer fatally shot a suspected bank robber who drove away from the police in a manner suggesting he was out of control when he swerved into oncoming traffic. *Id.* at 724. The defendant-officer caught up to the fleeing suspect and the two cars apparently collided. *Id.* The defendant-officer stated that the suspect proceeded to ram his car into

the officer's car and at that point, the officer fired three shots into the suspect's car. *Id.* The *Dudley* court concluded that the defendant-officer's actions were not an unreasonable use of force because when the two cars collided, there was no evidence that the defendant-officer had the suspect's car under control, "[i]t would have only taken a few seconds for [the suspect] to swerve back into oncoming traffic and hit an innocent motorist as he had almost done minutes before.*"* *Id.* at 727.

The facts in *Dudley* are distinguishable from the facts here. There is no evidence to suggest that at the time the officers reached the plaintiff that he posed a threat to the public or the officers. He was surrounded by four officers and could not have returned to his car and sped off into traffic. There is a genuine issue for trial as to whether defendant-officers Minard's, Marimpietri's, Calabrese's and Parish's actions were unreasonable in light of the circumstances before them.

However, plaintiff has presented no evidence that defendants Edwards, Graves, or Godlewski were present and able to prevent the alleged unlawful acts of defendants Minard, Marimpietri, Calabrese, and Parish. *See Turner v. Scott*, 119 F. 3d 425, 429 (6th Cir. 1997). While plaintiff is correct that an officer has a duty to intervene to prevent the unlawful use of force, plaintiff has presented no evidence suggesting these officers observed, or had the ability to prevent defendants Minard,'s Marimpietri's, Calabrese's and Parish's actions. In order for a defendant-officer to be held liable under a failure to intervene theory, plaintiff must establish: "(1) the officer observed or had reason to know that excessive force would be or was being used and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* Plaintiff presents no evidence regarding defendants Edwards or Graves involvement and defendant Godlewski

testified at his deposition that he fell and never made it to the location where plaintiff had been taken to the ground. Therefore, defendants Edwards, Graves, and Godlewski are dismissed from this action. Defendant Helvey testified that he was on the scene, but claims he never saw any of the officers hit, punch or kick the plaintiff. Given his presence, and the factfinder's prerogative to disbelieve his testimony, there remains a question of fact as to whether defendant Helvey failed in his duty to prevent the use of force on plaintiff. *See Smith v. Ross*, 482 F. 2d 33 (6th Cir. 1973).

As to the second prong of the qualified immunity test, defendants maintain that plaintiff cannot show that a reasonable officer in the defendants' position would have known that he or she was violating a clearly established right. *See Dunigan v. Noble, supra*, and *Brosseau v. Haugen*, 543 U.S. 194 (2004). In *Brousseau*, the defendant-officer was called out to a home after a fight had been reported. *Id.* at 597. When the defendant-officer arrived, one of the individuals involved in the altercation, Kenneth Haugen, took off on foot hiding in the neighborhood for thirty to forty-five minutes, before he ran back to the home, jumped in his Jeep and started it. *Id.* At that time, there were other officers on foot still in the vicinity who had been called to assist in the search for Haugen. *Id.* When Haugen started the Jeep and began to move, the defendant officer jumped back and fired one shot through the driver's side window, hitting Haugen in the back. *Id.* The defendant-officer explained that she was "fearful for the other officers on foot who she believed were in the immediate area, and for the occupied vehicles in Haugen's path and for any other citizens who might be in the area." *Id.*

These facts are distinguishable from the present matter. In *Brousseau*, the defendant-officer was confronted with "a disturbed felon, set on avoiding capture through

-11-

vehicular flight, when persons in the immediate area [we]re at risk from flight." *Id.* at 200. Here, the allegations concern events that took place once the plaintiff was already out of his vehicle. There was no possible harm to the public or the defendant-officers when plaintiff was on the ground and there were a total of four officers surrounding him. In *Brousseau*, the defendant-officer had a split second to prevent Haugen's vehicular flight because he posed "a major threat to, among others, the officers at the end of the street." *Id.* Thus, the *Brousseau* court concluded that, noting its decision in this area "depends very much on the facts of each case[,]" since the defendant-officer's actions "fell in the 'hazy border between excessive and acceptable force,'" it was not clearly established at the time of her actions that she was violating Haugen's Fourth Amendment rights. *Id.* at 201.

In any event, the unresolved factual disputes prevent the court from granting qualified immunity to defendants Minard, Marimpietri, Calabrese, Helvey and Parish. *See Kostrzewa v. City of Troy*, 247 F. 3d 633, 641-42 (6th Cir. 2001); *see also, Carpenter v. Bowling*, 276 Fed. App'x 423(6th Cir. May 2, 2008). "When the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F. 3d 886, 896 (6th Cir. 2007). Defendants Minard, Marimpietri, Calabrese, Parish and Helvey are entitled to qualified immunity, only if their testimony is credited and the plaintiff's is not; their motion for summary judgment as to plaintiff's excessive force claim is denied.

B. <u>Failure to Train and/or Supervise</u>

Plaintiff argues that the City of Taylor has failed to train and supervise its officers as to the proper use of force when effecting an arrest because each defendant testified that

he had received one performance evaluation during his employment with the City of Taylor. Plaintiff also points to evidence that defendants Marimpietri, Calabrese and Parish have been sued in the past for allegedly using excessive force. Further, defendant Calabrese testified that several citizens have filed complaints against him relating to his demeanor and treatment towards citizens. Plaintiff also argues that training is wholly inadequate, specifically defendant Parish does not know the last time he received training with respect to Taser deployment, estimating it could be longer than five years.

A local government may be liable as an entity under § 1983 when "execution of government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). To find municipal liability, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Gardner v. Memphis Police Dep't*, 8 F. 3d 358, 364 (6th Cir. 1983). Additionally, plaintiff must prove that: (1) "the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter," and (2) "such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F. 3d 989, 996 n. 8 (6th Cir. 1994).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Fisher v. Harden*, 398 F. 3d 837, 849 (6th Cir. 2005). "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was

aware of prior unconstitutional actions of its employees and failed to respond." *Stemler v. City of Florence*, 125 F. 3d 856, 865 (6th Cir. 1997); *see also, Miller v. Sanilac County*, 606 F. 3d 240 (6th Cir. 2010) (The plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipal actor] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.")

Plaintiff's *Monell* claim cannot survive summary judgment. Plaintiff has failed to provide any evidence that the inadequacy in training or supervision equates to deliberate indifference because the City of Taylor ignored known or obvious consequences to the defendants' actions. *See Fisher v. Hardon*, 398 F. 3d at 849. Rather, the evidence reveals that the City of Taylor requires each officer to participate in, and complete a four month field training program. Further, any officer who carries a Taser weapon must complete training as to its use, which includes being tased during the training. The fact that the officers have been previously sued in actions alleging excessive force does not establish that the City of Taylor knew of prior unconstitutional acts of its employees and failed to respond. In any event, defendants argue that all of these suits have been dismissed, and plaintiff has failed to provide any evidence demonstrating that a question of fact exists as to the City of Taylor's deliberate indifference to plaintiff's constitutional rights. This claim is dismissed.

### C. State Law

#### 1. Assault and Battery

Under Michigan law, assault is defined as an "intentional unlawful offer of corporal

injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482-83; 687 N.W.2d (2004). A battery is "a willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.* at 483.

However, governmental employees are shielded from intentional tort liability if their actions are justified. *See Ross v. Consumers Power Co.*, 420 Mich. 567, 659; 363 N.W. 2d 641 (1984). In order to be immune from intentional tort liability, the governmental employee must establish that (1) his acts were taken during the course of employment and that he was acting within the scope of his authority or reasonably believed he was acting within the scope of his authority, (2) he was acting in good faith or without malice, (3) and the challenged act was discretionary in nature rather than ministerial. *See Odom v. Wayne County*, 482 Mich. 459, 473-76; 760 N.W.2d 217 (2008). The first element of this test "ensures that a governmental employee will not be afforded immunity when committing ultra vires acts, as those are outside the scope of the employee's authority." *Id.* at 474. For the reasons discussed in section IV.A., there is a genuine issue of fact as to whether defendants Minard, Marimpietri, Calabrese and Parish were acting within the scope of their authority, and whether they were acting in good faith when they were arresting the plaintiff. Summary judgment as to plaintiff's claim of assault and battery as to defendants Minard, Marimpietri, Calabrese and Parish is therefore inappropriate. Defendants Edwards, Graves, Godlewski and Helvey are dismissed from this claim because plaintiff has presented no evidence suggesting these defendants committed an assault and battery

upon him.

### 2. Gross Negligence

Governmental employees are immune from tort liability for injuries caused while in the course of employment, unless the employee is found to be grossly negligent. *See* MICH. COMP. LAWS § 691.1407(2); *see also, Poppen v. Tovey*, 256 Mich. App. 351, 356 (2003). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(a). However, Michigan courts have rejected attempts to "transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous*, 262 Mich. App. At 483-84. Here, plaintiff's allegations concerning the defendants sound in the tort of assault and battery, in that defendants are alleged to have beaten, kicked, stomped on, punched and tasered plaintiff while he was subdued. Accordingly, plaintiff's gross negligence claim is dismissed.

### V. CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Defendants' motion for summary judgment as to plaintiff's Fourth Amendment claim (count I) against defendant Edwards, Graves, and Godlewski is GRANTED.

Defendants' motion for summary judgment as to plaintiff's Fourth Amendment claim (count I) against defendants Minard, Marimpietri, Calabrese, Helvey and Parish is DENIED.

Defendants' motion for summary judgment as to plaintiff's claim against the City of Taylor and the defendant officers in their official capacities (count II) is GRANTED.

Defendants' motion for summary judgment as to plaintiff's state law claim of assault

and battery (count III) against defendants Edwards, Graves, Helvey and Godlewski is GRANTED.

Defendants' motion for summary judgment as to plaintiff's state law claim of assault and battery (count III) against defendants Minard, Marimpietri, Calabrese and Parish is DENIED.

Defendants' motion for summary judgment as to plaintiff's state law gross negligence claim against the defendant officers (count IV) is GRANTED.

Defendants City of Taylor, Matthew Edwards, Jeffrey Graves and Eric Godlewski are dismissed from this action.

A joint final pretrial order is due on July 1, 2011.

The parties shall appear for the final pretrial conference on July 11, 2011 at 1:30 p.m.

Trial shall commence on July 18, 2011 at 9:00 a.m.

SO ORDERED.

Dated: May 16, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 16, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---